# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA,
PLAINTIFF,

[redacted] 05 185S

V.

CIVIL ACTION No.__________

ASHBEL T. WALL, II, DIRECTOR,
RHODE ISLAND DEPARTMENT
OF CORRECTIONS (RIDOC);
JOSEPH A. DINITTO,
ASSOCIATE DIRECTOR, RIDOC
DEFENDANTS.

## CIVIL RIGHTS COMPLAINT WITH JURY DEMAND

this is a civil Rights Action Filed by the Plaintiff, against the Rhode Island Department of Corrections (hereafter RIDOC) and certain individual correctional officials employed by the RIDOC, the Plaintiff brings this civil Rights action to Redress the deprivations under color of state law of Rights, Privileges and immunities secured to him by Provisions of the eighth and Fourteenth Amendments to the United states Constitution. Plaintiff seeks compesatory and

Punitive damages, injunctive and declaratory Relief and Jury Trial on all issues Triable by Jury.

## JURISDICTION

this Court has Jurisdiction over the Plaintiff's Claims Under 42 USC 1331 and 1343, the substantive claims herein Arise under 42 USC 1983. And the Eighth and Fourteenth Amendments of the United states Constitution. The Pending Jurisdiction of this Court is also invoked.

## PARTIES

1. At all times herein material Plaintiff Bernardo Figueroa. Was and continue to be sentenced to the custody and care of the RIDOC, Pursuant To an involuntary transfer. He Was Arbitrarily and by Force transferred to Virginia to Punishing him and Prevent him from Pursue his claims.

2. At all times herein material, defendant Ashbel T. Wall Was and have been Director of RIDOC. Pursuant To R.I. Gen. Laws 42-56-10 (v) He is Responsible for the Promulgation and implementation of all administrative, and directive Policies, Practices and Procedures of the RIDOC, He is Responsible for the safety and Welfare of the Plaintiff and all inmates sentenced to his custody and care. Defendant Wall showed Willful deliberate indifference to Plaintiff's Health and Physical well being

Defendant Wall is sued in his individual and official capacity.

13. At all time herein material defendant Joseph A. DiNitto was and have been associate director RIDOC. He is responsible for the interstate transfers of convicted inmates sentenced to the custody and care of the RIDOC. Defendant DiNitto showed willful deliberate indifference to Plaintiff's health and safety. Defendant DiNitto is sued in his individual and official capacity.

# FACTS

4. In 1990, the Plaintiff was convicted of second degree murder and sentenced to the custody and care of the RIDOC. In 1991, while confined at the Rhode Island Adult Correctional Institution (hereafter RIACI), medical staff at the RIACI diagnosed him as having eye condition i.e; Progressive Pterygium, that would require surgery on both of his eye.

5. On November 10, 1992, RIACI, personnel i.e; officers McCrey and Mintz transported the Plaintiff to Rhode Island Hospital (hereafter RIH) in order to undergo surgery on his right eye. Doctor Daniel E. Petashnick, and several other doctors and medical personnel at RIH performed the surgery i.e, Pterygion excision.

6. Following his November 10, 1992 surgery, RIACI personnel transported the Plaintiff to RIH. on numerous occasions. During these visits, doctors however, examined his ears canal, no his eye.

7. Between September 1992 and July 1999, several physical, blood, urine and other medical test was or were conducted on Plaintiff

8. In 1997, Plaintiff began to experiece severe pain and discomfort inside and arounds his ears canal. He did complained to the medical staff at the RIACI about his pain and discomfort.

9. Doctor Scott Allen, a doctor at RIACI examined the Plaintiff and noted that he had an ear infection, and ordered antibiotic. the nurse administered a shot of Penicillin to Plaintiff as ordered by Dr. Allen.

10. Do to the fact that the Plaintiff is allergic to Penicillin, the shot of Penicillin caused an adverse reaction, as a resolt, Plaintiff was transported to the RIH in energency basis, where he received treatment.

11. the nurse who examined the Plaintiff at the RIH noted that he had something inside of his ear canal and asked him about that.

12. Plaintiff Was thereafter Returned to the RIACI Where he Continue Complaining about his ears Serious Condition getting Worse due to the implanted devices.

13. Between 1998, and 1999, the Plaintiff Filed several grievance and sought to have the illegal and unconstitutional implanted devices removed the RIACI Medical and Prison staff denied all Plaintiff grievances, saying that nothing have been implanted into his ears canal that he was delirious and referred him to the Psychologist.

14. On June 25, 1999, a Psychological test Was Conducted on Plaintiff by Doctor Linda Osborne, clinical Psychologist at the R I A C I, in her Report Dr. Osborne Wrote:

Bernardo Was seen at the Request of Medical staff after a Medical grievance Was filed by him Regarding an implants in his ears. "After spoke With him, he is clear and convenced that his Reports are valid" "I frankly saw no signs of fabrication beyond this implants situation. I conduct some further checking of fact but find no signs of Psychosis.

15. The Plaintiff Was Referred to Doctor Matola, an in house doctor at the RIACI, doctor Matola thereafter examined the Plaintiff, noted that he had ears infection and prescribed medication and treatment. He also told the Plaintiff that he don't know why they put those things into his ears.

16. In Figueroa v. Vose, et. al., C.A. No. 98-169ML on January 12, 1999, RIDOC officials and the Plaintiff agreed to settle the case and executed a Memorandum of Stipulation wherein the defendants agreed to schedule surgery for Plaintiff's left eye at R.I.H.

17. On July 6, 1999, the surgery was scheduled to be performed at Rhode Island Hospital but the surgery was never performed in Plaintiff's left eye.

18. In the case of Figueroa v. Vose, et. Al.; C.A. No. 97-547H, on October 29, 1998, the Plaintiff and Rhode Island Prison officials agreed to settle that case which was pending at that time by arranging for the Plaintiff to be transferred to a confinement facility located in the state of New Jersey after he receive his eye surgery and other civil and criminal matters he had pending at that time be disposed of.

19. ON August 5, 1999, in violation of the Settlement Agreement over Plaintiff objection the Plaintiff was involuntarily, arbitrarily and by force transferred to Virginia to punishing him for exercising his First Amendment Rights and to prevent him from pursue his claims. In Virginia Prison Plaintiff is being holding like a hostage in supermaximum security facilities, lock down long term control units far from family and friends, with very heavy censorship and restrictions on comunications. Visits, foods, medical and dental care, outside contacts, covined with constant harassment, provocation, intimidation, sleep deprivation, sensory deprivation, discrimination, humilination and brutality.

20. While confined in Virginia, Plaintiff complained of having severe pain and discomfort in his ears and on Sept. 28, 2000, skull x-rays were taken which revealed the implanted devices.

21. Plaintiff requested copies, and was told: copies of the photographs will not be provided without court order

22. Plaintiff then was seen by Doctor Smith who after conducted an examination noted that plaintiff had ears infection and prescribed Hydrocortisona Otic Solution UPS ear drops and antibiotic

23. On March 14, 2001, Plaintiff filed grievance complaining about not receiving the medication prescribed for the treatment of his ears condition by Dr. Smith. In response he was told: this have been noted and will be addressed. However Plaintiff did not received the prescribed medication and the matter has not yet been addressed.

24. Plaintiff then on several occasions sent letters to the defendant explaining them that he have been denying medical attention and treatment needed to correct his ears serious condition. Defendant refused to take corrective action

25. On March 4, 2003, defendants' Attorney i.e. Michael Grant sent a fax to Virginia Prison officials in which he stated: Figueroa has filed an action alleging that RIH implanted a device in his ear canal without his consent. He has asked for injunctive relief." In objection I need to say that we have called Virginia for a medical exam to determine if in fact any type of device has been implanted in his ear, if not if we could have a report to that effect.

26. Plaintiff filed grievance to Virginia Medical and Prison staff concerning his ear condition due to the implanted devices

in Response to Plaintiff grievance, Virginia Medical and Prison staff made the following statement: " It is documented that you do have ear implants, bilaterally, however, there is no medical need at this time to have them removed.

27. Do to the fact that Plaintiff continue experiencing severe pain and discomfort inside and around his ear canal and his left ear is already deft, on December, 20, 2003, he sent a letter to the Virginia DOC. health service Director, i.e.. Mr. Fred Schilling, explaining him his ear condition getting worse, requesting that the implanted devices that should never have been implanted in his ears canal be removed. In his response of January 8, 2004, Mr. Schilling stated: The Institutional Phycisian Will determine if it is medically necesary to remove the implants.

28. Since then the Plaintiff have been requesting from the institutional physician to have the implanted devices removed, and the institutional Physician i.e.: Doctor Williams did not only denied Plaintiff's Requests and complaints, but refused to even see or treats Plaintiff. it should be noted that Dr. Williams is very racist and sadistic person

29. While in Virginia Plaintiff complained to medical and prison staff about having complications with the Pterygium in his eye, in doing so Plaintiff inquired from them when in fact he was going to have the eye surgery performed. Plaintiff was referred to the eye doctor.

30. After being examined at the Virginia Prison the eye doctor made the following report: A Pterygium is a wadge-shaped fibrovascular growth of conjunctiva (the surface tissue of the white of the eye) that can extend onto the cornea. in inmate Figueroa case the Pterygium continues to grow and encroaches on the cornea that it threatens his line of vision. and surgery may be appropriate.

31. Plaintiff submitted several complaints, requests and grievances requesting the eye surgery. in response he was told that the VDOC would not pay for the operation the plaintiff needed to correct his eye condition. that VDOC would only pay for life threatening operations.

32. Since his transfer to Virginia Plaintiff have been confined 23 to 24 hours a day in cell painted completely white and illuminated 24 houre a day by differents brights lights, he complained to medical and prison staff about

having serious problems with his vision due to the constant exposured to illumination. he was referred to the eye doctor.

33. On September 2001, Plaintiff was seen by an optometrist i.e. doctor Owens who diagnosed him with macular degeneration. he prescribed eye-glasses and Theragram M. tablet for this ailment

34. Plaintiff continued complaining about lossing eyesight due to the constant exposured to bright illumination in his cell, and on January 2, 2002, he was seen and evaluated by an optometrist i.e. Mark Bickerton, O.D. Doctor Bickerton made the following report: The constant exposured to bright illumination is causing a loss of pigment in the macular region of the retina on Mr. Figueroa. eye

35. Plaintiff has filed several complaints and grievance, complaining about the 24 hours cell illuminated being aggravating his eye serious condition. in response Plaintiff have been told the lights in your cell will remain on 24 hours a day for security reason, and to make matter even worse a new rules has been posted in which inmates are not allowed to hang anything from their bunks or any objects in the cell obstructing staff view of inmates face.

36. For the Past three years. Plaintiff have been complaining to Virginia medical and prison staff about having severe pain in his tooth requesting to be seen by a dentist. in response he has been told: you have been scheduled to see the dentist.

37. Plaintiff Put in several medical requests to see a Doctor. Plaintiff was not allowed to see a doctor because the institutional Physician i.e.; Dr Williams has indicated that no medical treatment would be given to the Plaintiff by him

38. Concerning being denying access to needed medical and dental care and subjected to serious unconstitutional conditions in Virginia Prison on a continuing basis. between 2000 and 2004, Plaintiff have been sent letters to the defendants explaining the Problems he is having in Virginia and requesting to be relocated outside of Virginia Jurisdiction.

39. the defendants have maliciously and sadistically denied and disregarded all Plaintiff Requests and complaints.

40 Plaintiff's serious medical conditions are getting worse and the defendants knows of

and continues disregarding an excessive risk to Plaintiff's health and Physical Well-being.

## LEGAL CLAIMS

Paragraphs 1 through 40 are incorporated herein by reference.

## COUNT I

Defendants' refusal to have the implanted devices removed which they have illegal and unconstitutional implanted on Plaintiff is an unconstitutionally deliberate disregards for his serious medical needs, and violates Plaintiff's Rights as guaranteed to him by the eighth amendment to the United States Constitution.

## COUNT II

Defendants' decisions to have those devices implanted on Plaintiff and refusal to have them removed, is unconstitutional and constitutes Witlful deliberate indifference to plaintiff serious medical conditions and needs because its cause him Physical and emotional injuries and lack Penological justification, and violated Plaintiff's eighth amendment Rights.

COUNT III

Defendants' Refusal to have the Pterygium Removed From Plaintiff's eye is a violation of the January 12, 1999, settlement Agreement

COUNT IV

Defendants' Refusal to have the Pterygium Removed From Plaintiff eye is an unconstitutionally deliberate disregards to his serious medical condition, and is a violation of Plaintiff's Rights as guaranteed to him by the Eighth Amendment of the United States Constitution

COUNT V

Defendants' refusal to have the Pterygium Removed From Plaintiff's eye which causing him loss of eye-sight and blindness Constitutes Willful deliberate indifference to Plaintiff's health and Physical Wellbeing and is a violation of the Plaintiff's Rights as guaranteed to him by the eighth amendment to the United States Constitution-

COUNT VI

Defendants' decisions to Confine Plaintiff

in a prison where he is confined 23 to 24 hours a day in cell which is illuminated 24 hours a day by brights lights is an unconstitutionally deliberate disregards for his serious medical condition, the continuous illumination not only aggravates his eye serious condition but also causes him physical and psychological harm and lacks legitimate penological justification.

## COUNT VII

Defendants' decision to transfer and confine plaintiff in a prison known to be unsafe, dangerous and lifethreatening and refusal to relocated him outside of said unconstitutional conditions after being on notice constitutes willful deliberate indifference to plaintiff's health and safety in violation of the eighth and fourteenth amendments to the United States constitution.

## COUNT VIII

The acts and omissions of the named defendants as described in the within complaints have and continue to deny plaintiff of his eighth amendment rights to be free from cruel and unusual punishment

# COUNT IX

## DELIBERATE INDIFFERENCE TO PLAINTIFF'S NEEDS

41. the Plaintiff herein incorporates by reference and realleges each and every allegation set forth above in Count-I through Count-VIII, inclusives in this Count-IX.

42. the Plaintiff has suffered severe and permanent personal injuries as a result of the defendants deliberate indifference to his needs, both physical and emotional including, but not limited to, pain and suffering, mental fright and shock, the loss of capacity, severe depression and other injuries.

43. the action of the defendants individually and collectively, in acting with deliberate indifference towards the Plaintiff's serious medical and physical needs were willful, reckless, wanton, malicious, sadistic and without any legal justification.

44. in acting with deliberate indifference to the Plaintiff's medical and physical needs the individual defendants were acting in accordance with policies, practices, and procedures that were tolerated by the RIDOC, and which in effect,

ENCOURAGED AND CONDONED THE DEPRIVATION OF CONSTITUTIONAL RIGHTS OF INDIVIDUAL INMATE

## COUNT X

45. THE PLAINTIFF HEREBY INCORPORATES BY REFERENCE AND REALLEGES EACH AND EVERY ALLEGATION SET FORTH ABOVE IN COUNT-I, THROUGH COUNT-IX, INCLUSIVE IN THIS COUNT-X

46. THE ACTIONS OF THE DEFENDANTS, INDIVIDUALLY AND COLLECTIVELY, IN VICIOUSLY AND INTENTIONALLY VIOLATING THE PLAINTIFF'S RIGHTS, CONSTITUTES A VIOLATION OF THE PLAINTIFF'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

47 AS A RESULT OF SAID VIOLATIONS OF HIS CONSTITUTIONAL RIGHTS, THE PLAINTIFF HAS SUFFERED SEVERE AND PERMANENT PERSONAL INJURIES INCLUDING BUT NOT LIMITED TO, PAIN AND SUFFERING, MENTAL ANGUISH, IMPAIRMENT OF HIS MENTAL AND PHYSICAL CAPACITY, EAR DEFT, THE LOSS OF EYESIGHT AND OTHER INJURIES.

48. THE ACTIONS OF THE INDIVIDUAL DEFENDANTS IN VICIOUSLY DEPRIVING PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS WERE WILLFUL, RECKLESS, WANTON, AND MALICIOUSLY AND SADISTICALLY TO CAUSE HARM AND DAMAGES TO HIM

49. the actions of the individual defendants in viciously depriving plaintiff of his constitutional rights were in accordance with policies, practices, procedures and customs of the RIDOC, which tolerated and condoned such actions against inmates by correctional officials.

## RELIEF REQUESTED

Wherefore, plaintiff respectfully requests this Honorable Court for the following relief:

a)- Issue an order directing the defendants to immediately arrange to have the plaintiff relocated outside of Virginia jurisdiction.

b)- Issue an order directing the defendants to immediately arrange to have the illegal and unconstitutional implanted devices removed.

c)- Issue an order directing the defendants to immediately arrange to have the eye operation performed in plaintiff left eye. in compliance with the settlement agreement of January 12, 1999, in Figueroa v. Vose, et. al; C.A. No. 98-169 ML.

d)- Issue an order directing the defendant

to immediately arrange to have the plaintiff moved from 24 hours a day illuminated cell;

e) - that plaintiff be awarded one million dollars ($1,000,000.00), in compensatory damages as against the defendants, jointly and severally;

f) - that he be awarded one million dollars ($1,000,000.00), in punitive damages, as against the defendants, jointly and severally;

g) - that he be awarded attorney fees and costs, as against all defendants jointly and severally.

h) - that he be awarded interest and costs along with such other and further relief as may be deemed appropriate under the circumstances.

DATED: April 20, 2005

Respectfully submitted.

[signature]

BERNARDO FIGUEROA.
RED ONION STATE PRISON
P.O. BOX 1900
POUND, VA. 24279

# CERTIFICATE OF SERVICE

I hereby certifies that on this 20th day of April 2005, A true courtesy copy of the within complaint was mailed to the defendants at RIDOC, 40 Howard Avenue, Cranston. R.I. 02920

BERNARDO FIGUEROA

FILED

2005 MAY -5 A 11:30