UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA

v. C. A. NO. 05-185 S

A. T. WALL, ET AL

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come the Defendants in the above-entitled matter and hereby move This Honorable Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 as and for the reasons proffered in the accompanying Memorandum.

DEFENDANTS.
By Their Attorney,

Michael B. Grant, Esq.
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864

CERTIFICATION

The undersigned hereby certifies that on this, the 17th day of March, 2006, the within Defendants' Motion for Summary Judgment and accompanying Memorandum were mailed to the Clerk, United States District Court and to Bernardo Figueroa, P. O. Box 8249, Cranston, R. I. 02920.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA

v. C. A. NO. 05-185 S

A. T. WALL, ET AL

MEMORANDUM

Plaintiff, a Rhode Island penal inmate, was voluntarily transferred to a prison facility in the state of Virginia in 1999. The parties executed a stipulation to that effect on October 29, 1998, which was ordered by United States Magistrate Judge Jacob Hagopian.

In 1999, the instant Defendants had agreed to allow Plaintiff to receive surgery to his left eye. The surgery was never performed as a result of Plaintiff refusing to engage in pre-op testing required by Rhode Island Hospital prior to undergoing the surgery. Accordingly, the surgery was never performed and on August 5, 1999, Plaintiff was transported to a confinement facility in the state of Virginia.

Plaintiff urges, in the instant action, that the Defendants are in violation of the Eighth Amendment for the United States Constitution in refusing him to have surgery to his left eye and also, refusing to allow Plaintiff to have implants removed, which he alleges were unlawfully placed in his ears.

Since the filing of the instant lawsuit, the parties have discussed settlement and the Defendants have agreed to have Plaintiff receive surgery to his left eye. The parties also

agreed during a telephonic conference with United States Magistrate Judge Jacob Hagopian to have his ears examined relative to his claims that implants were inserted.

## SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides the granting of summary judgment when the moving party has "shown that there is no genuine issue as to any material fact and that . . . [they are] . . . entitled to judgment as a matter of law." The moving party bears the burden of initially showing that there are no genuine disputes as to material fact in the case. **Adickes v. F. H. Kress and Co.**, 398 U. S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Whether a fact is material to the outcome of the case is determined by the substantive law governing the issues. **Anderson v. Liberty Lobby, Inc.**, 447 U. S. 242, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the contention on which the non-moving party would have the burden of proof for trial. **Celotex Corporation v. Catrett**, 477 U. S. 317, 106 S.Ct.2548, 91 L.Ed.2d 265 (1986). Once the moving party has come forward with such a showing, the burden shifts to the opposing party to establish that there are material facts in dispute. **Matsushita Electric Industrial Company v. Zenith Radio Corp.**, 475 U. S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party then has the burden of coming forth with "specific facts showing that there is a genuine issue for trial." **Federal Rule of Civil Procedure** 56(e). The non-movant must do more than simply show that there is "some metaphysical doubt as to the material facts." **Matsushita** at 596. Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case, such

that a jury could return a verdict in its favor. See **Anderson v. Liberty Lobby**, 477 U. S. at 248 (1986) (interpreting the "genuineness" requirement).

## EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U. S. Const. Amend. VIII. The cruel and unusual punishments clause was designed to protect those convicted of crimes, and can limit the type of punishment that is imposed. **Ingraham v. Wright**, 430 U. S. 651, 664, 97 S.Ct. 1401, 1408 (1977). After an individual is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. **Whitely v. Albers**, 475 U. S. 312, 318-319, 106 S.Ct. 1078, 1083-1084 (1986). "It is obduracy in wantonness, not inadvertence or error in good faith that characterized the conduct prohibited by the cruel and unusual punishments clause." **Id.**

The failure to provide medical attention to an injured prisoner can be an Eighth Amendment violation. **Layne v. Vinzant**, 657 F.2d 468 (1st. Cir. 1981); **Rosen v. Chang**, 758 F.Supp.799 (D.R.I. 1991). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." **Estelle v. Gamble**, 429 U. S. 97, 106, 97 S.Ct. 285, 292 (1976). Officials must "intentionally" delay or completely deny access to medical care. **Id.** at 104-05.

Deliberate indifference requires a state of mind akin to criminal recklessness; that the official knew of and consciously disregarded a substantial risk of serious harm. See **Farmer v. Brennan**, 511 U. S. 825m 114 S.Ct. 1970 (1994); **Mahan v. Plymouth County House of Corrections**, 64 F.3d 14 (1st. Cir. 1995). Deliberate indifference to the medical needs of an

inmate amounts to an Eighth Amendment violation only when the needs of the inmate are serious. **Hudson v. McMillian**, 503 U. S. 1, 112 S.Ct. 995 (1992).

The seriousness of an inmate's injuries are measured objectively. **Wilson v. Seiter**, 501 U. S. 294, 298, 11 S.Ct. 2312 (1991). "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " **Mahan**, 64 F.3d at 18 (quoting **Gaudreault v. Salem**, 923 F.2d 203. 208 (1st. Cir. 1990)).

## PLAINTIFF'S COMPLAINT

Plaintiff, in his complaint, alleges that since the late 1990s he has suffered from a serious condition to his left eye, which he refers to as "progressive pterygium." See **Plaintiff's Complaint**, Paragraphs 4 through 8. In 1992, Plaintiff was transported to Rhode Island Hospital, where he had said condition corrected surgically to his right eye. See **Plaintiff's Complaint**, Paragraph 5. In 1999, Plaintiff alleges that the instant parties agreed to have surgery conducted to Plaintiff's left eye to remedy the same condition that Plaintiff had corrected in 1992. However, Plaintiff refused to undergo pre-op testing required by Rhode Island Hospital and surgery to his left eye was never performed. Plaintiff, on August 5, 1999 was transported to a confinement facility in the state of Virginia.

Plaintiff urges, in the instant complaint, that Defendants are in violation of his Eighth Amendment rights in refusing his undergoing surgery to his left eye and also refusing to allow him to have implants removed, which he alleges were unlawfully placed in his ears.

Since the filing of the instant lawsuit, the parties have discussed settlement and the Defendants agreed to have Plaintiff receive surgery to his left eye and also to have the Plaintiff's ears examined relative to his claims that implants were inserted.

Recently, Plaintiff has been examined twice relative to his claim that implants were unlawfully implanted in his ear canals or skull. On February 22, 2006, Dr. MacMillan M.D., M.P.H. (Masters in Public Health), specializing in ears, nose and throat, visited Plaintiff at the ACI and conducted an examination of his ears. Dr. MacMillan noted the Plaintiff's remarks that he felt he had implants inserted in 1992 when he was operated on; that Plaintiff had indicated no complaints of hearing loss or otitis (infection) and that upon physical examination were in normal limits. Subsequently, on March 8, 2006, the Plaintiff was transported to the "MRI Center" located in Cranston, Rhode Island. Plaintiff received a skull X-ray during said visit. The X-ray report indicated "no ear implant or specific abnormal densities are seen. The exam is entirely normal." The report was signed electronically by Louis Maiello, M. D. Dr. Edoro, full-time staff physician at the Rhode Island Department of Corrections, on February 14, 2006 examined Plaintiff's ears and found that "both tympanic membranes of the Plaintiff's ears were normal and no implants seen."

## CLAIM OF EAR IMPLANTS

Defendants are entitled to judgment as a matter of law based on the Plaintiff's claim that implant devices have been unlawfully inserted in the Plaintiff's ear canals or skull. Despite the Plaintiff's allegations, all the medical evidence existing, based on objective medical tests taken of the Plaintiff, reveal that there are no abnormal or foreign objects placed in Plaintiff's ear canals or skull. Plaintiff can allege otherwise and speculate

otherwise; however, the objective medical evidence is clear and unrebutted and entitles the Defendants to judgment as a matter of law.

## CLAIMS OF NECESSARY EYE SURGERY

Plaintiff alleges that he requires surgery to his left eye as the result of a condition known as "progressive pterygium." However, these very same parties to the instant lawsuit agreed to permit the Plaintiff to have surgery to his left eye in 1999; however, said surgery was never performed as a result of the Plaintiff refusing to undergo the Rhode Island Hospital-required-pre-op testing. Plaintiff was seen at the Rhode Island Hospital Eye Clinic on March 8, 2006. The Rhode Island Hospital appointment was made at the request of the Department of Corrections, specifically, Dr. Melwick. On March 8, 2006, during an exam of the Plaintiff at Rhode Island Hospital's Eye Clinic, a staff member of the Eye Clinic noted that the patient [Plaintiff] did not desire surgery; that artificial tears would be provided as needed and follow-up in six months. Said notations appear on a Department of Corrections medical referral form. See Affidavit of Pauline Marcussen. According to the objective evidence, that is, the Plaintiff's medical records, Plaintiff indicated to the staff at Rhode Island Hospital, on March 8, 2006, that he no longer desired to undergo surgery to his left eye. This is not the first time Plaintiff has had a change of heart after surgery has been scheduled to his left eye. On December 22, 1998, Plaintiff reported to Nurse Rosemary DiGiulio that he would not be subjected to pre-op testing, and therefore, surgery to his left eye was cancelled. See Affidavit of Rosemary DiGiulio. Moreover, the condition the Plaintiff's left eye is subjected to, that is, "progressive pterygium" does not constitute a serious medical need. The condition is a covering over the white portion of the eye,

sometimes caused by extreme dust or sun exposure. The eye may become inflamed and may cause irritation. To remove the covering involves elective surgery only and does compromise an individual's quality of eyesight. See Affidavit of Dr. Francis Figueroa.

Accordingly, Defendants are entitled to judgment as a matter of law as concerning the Plaintiff's allegation of devices being illegally implanted in his eardrums and/or skull on the basis that all objective medical evidence demonstrates that no such devices or foreign objects have, in fact, been implanted. Additionally, Defendants are entitled to judgment as a matter of law relative to the Plaintiff's claim that he suffers from a serious medical need concerning his left eye, and that the Defendants have unlawfully prevented him from receiving said surgery. Plaintiff has, twice, refused to undergo the surgery after having been given the opportunity by the Defendants.

Respectfully submitted,

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864