UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA

v. C. A. NO. 05-185 S

A. T. WALL, ET AL

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
PURSUANT TO LOCAL RULE 56 (a)

1. Plaintiff, a Rhode Island penal inmate, was voluntarily transferred to a prison facility in the state of Virginia in 1999.
2. The parties executed a stipulation to that effect on October 29, 1998, which was ordered by United States Magistrate Judge Jacob Hagopian.
3. In 1992, Plaintiff was transported to Rhode Island Hospital, where he had a condition known as Pterygium corrected surgically to his right eye. See **Plaintiff's Complaint**, Paragraph 5.
4. In 1999, the ACI had agreed to allow Plaintiff to receive surgery to his left eye, specifically to remedy a condition known as Pterygium. The surgery was never performed as a result of Plaintiff refusing to engage in pre-op testing required by Rhode Island Hospital prior to undergoing the surgery.
5. Accordingly, on August 5, 1999, Plaintiff was transported to a confinement facility in the state of Virginia.
6. Since the filing of the instant lawsuit, the parties have discussed settlement and the Defendants agreed to have Plaintiff receive surgery to his left eye and also to

have the Plaintiff's ears examined relative to his claims that implants were inserted.

7. The parties also agreed to the same during a telephonic conference with United States Magistrate Judge Jacob.

8. Recently, Plaintiff has been examined twice relative to his claim that implants were unlawfully implanted in his ear canals or skull.

9. On February 22, 2006, Dr. MacMillan, M.D., M.P.H. (Masters in Public Health), specializing in Ears, nose and throat, visited Plaintiff at the ACI and conducted an examination of his ears. Dr. MacMillan noted the Plaintiff's remarks during the exam that he felt he had implants inserted in 1992 when he was operated on; that Plaintiff had indicated no complaints of hearing loss or otitis (infection) and that upon physical examination were in normal limits.

10. Subsequently, on March 8, 2006, the Plaintiff was transported to the "The MRI Center" located in Cranston, Rhode Island. Plaintiff received a skull X-ray during said visit. The X-ray report indicated "no ear implant or specific abnormal densities are seen. The exam is entirely normal." The report was signed electronically by Louis Maiello, M. D. Dr. Edoro, full-time staff physician at the Rhode Island Department of Corrections, on February 14, 2006 examined Plaintiff's ears and found that "both tympanic membranes of the Plaintiff's ears were normal and no implants seen."

11. Plaintiff was seen at the Rhode Island Hospital Eye Clinic on March 8, 2006. The Rhode Island Hospital appointment was made at the request of the Department of Corrections, specifically, Dr. Melwick.

12. On March 8, 2006, during an exam of the Plaintiff at Rhode Island Hospital's Eye Clinic, a staff member of the Eye Clinic noted that the patient [Plaintiff] did not desire surgery; that artificial tears would be provided as needed and follow-up in six months. Said notations appear on a Department of Corrections medical referral form. See Affidavit of Pauline Marcussen.

13. The condition of Plaintiff's left eye, "pterygium", does not mandate treatment. The condition involves a covering over the white portion of the eye, sometimes caused by extreme dust or sun exposure. The eye may become inflamed and may cause irritation. To remove the covering involves elective surgery only and does compromise an individual's quality of eyesight. See Affidavit of Dr. Francis Figueroa.

Respectfully submitted,

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864