UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA,
PlAINTIFF,

V. C.A. No. 05-185 S

ASHBEL T. WALL, ET.AL.
DEFENdANTS.

# PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Now Comes the PlaintiFF in The above-entitled Matter and FOR the Reasons stated in the accompanying brief Objects to defendants' Motion FOR Summary Judgment

Respectfully submitted,

[signature]

BERNARDO FIGUEROA
I.D. # 80803
I.S.C. P.O. BOX 8249
CRANSTON, RI. 02920

# CERTIFICATE OF SERVICE

I hereby certifies that on this 1st day of May 2006, a true copy of the within objection to defendants' attorney Michael B. Grant, Esq. Deputy chief legal Counsel, RIDOC, at 40 Howard Avenue Cranston, RI 02920

[signature]
BERNARDO FIGUEROA

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA

V. C.A. No. 05-185S

ASHBEL T. WALL, ET AL.

## BRIEF IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION

this is a 1983 action Filed by the Plaintiff Bernardo Figueroa, against the Rhode Island Department of Corrections (RIDOC), and certain Individual Prison officials, seeking damages, declaratory Judgment, and injunctive Relief based on denial of medical care and other unconstitutional conditions and practices that the Plaintiff have been subjected by the defendants.

the Defendants have Filed a motion for summary Judgment as to the Plaintiff's Eighth Amendment claims against the defendants Ashbel T. Wall and Joseph A. DiNitto arguing that their conduct did not violate the Constitution.

# STATEMENT OF FACTS

the Plaintiff's affidavit submitted in Response to the defendants' motion that in 1991, Medical staff at RIACI dingnosed him as having eye condition that would Require surgery on both of his eye. And that arrangement was made at Rhode Island Hospital (RIH) to have the eye surgery performed.

On November 10, 1992, the Plaintiff was transported to the RIH in order to undergo surgery in his Right eye first. Years later the Plaintiff learned that while undergoing eye surgery with the consent and collaboration of Prison officials some sort of device was surgically implanted inside both of his ear canal without his knowledge and or consent.

Because of Prison officials Refusal to have the surgery in Plaintiff's left eye performed a civil action was filed by the Plaintiff Figueroa v. Vose, C.A. No 98-169 ML. On January 12, 1999, Plaintiff and the defendant agreed to settle that case by having the surgery on Plaintiff's left eye performed. but because the defendants once again Refusal to comply with the settlement agreement the Plaintiff filed a motion for contempt to which the defendants objected saying that as to March 12. 1999. the Plaintiff Refused to Pre operative testing Procedure. then between May and June 1999, the Plaintiff fully cooperated and undergo all Pre-operative

testing Procedure, and after all Pre-op. testing Procedure was completed, on June 7, 1999. Plaintiff was informed that he eye surgery will be schedule and on July 10, 1999, the eye surgery was scheduled, in said July 1999 the Providence Anesthesiologists sent Plaintiff a notice that the range of anesthesia charges is $400.00 to $1,200.00, but the surgery that was scheduled to be performed on Plaintiff's left eye was never performed because on August 5, 1999, prior to receive the eye surgery the Plaintiff was involuntarily and by force transferred to a Virginia Supermaximum Prison.

While in Virginia Prison, Plaintiff complained to medical and prison staff about he ear condition, the implants and requesting that the implanted devices be removed. In response he was told: it is documented that you do have ear implants, bilaterally, however, there is no medical need at this time to have them removed.

On October 16, 2006, Plaintiff was returned to the R.I.A.C.I. and placed in the segregation unit in isolation where he have been.

On November 2005, the institutional Physician Doctor Edoro examined the Plaintiff's ear canal and prescribed medication for the pain and to prevent ear canal infection, which the Plaintiff have been receiving two times a day.

On January 2006, Dr. Edoro again examined Plaintiff ear canal and referred him to an ear

Specialist at R.I.H. However, said Referral was overruled by highest Physician and staff of the RIACI.

On February 22, 2006, Plaintiff was seen by Doctor MacMillan and Rosemary Diguilio at the ACI. Medium Security Facility, at that time these medical staff told Plaintiff that they was asked by the Court to conduct an evaluation of his ear canal and implants situation. that they need all information and documents Plaintiff had. the Plaintiff told them that he do not have the information with him and Dr. MacMillan told Plaintiff that she will see him in two (2) week. No examination was conducted.

On said February 22, 2006, Plaintiff wrote to this Court requesting information as to whether the court has requested an evaluation of his medical condition. In response this Court informed the Plaintiff that the Department of Correction have arrange medical evaluation no the court. After that Plaintiff has not been seen by Dr. MacMillan.

On March 7, 2006, the Plaintiff was transported to the RIH. eye clinic concerning his left eye surgery. during said visit, Plaintiff explained to the Doctor that a civil trial has been scheduled for April 2006, in which he is Pro-se. that he wish to wait until the trial is completed to receive the surgery in his left eye. the Dr. Prescribed artificial tears and eye glasses and told Plaintiff to let Prison officials know when the trail is

Completed for them to made the arrangement for the surgery to be performed, that he would see him again in six (6) months.

On March 8, 2006 again the Plaintiff was seen by Dr. Edoro at the Intake Service Center (ACI) Dispensary concerning the ear implants and ear condition. Dr. Edoro told Plaintiff that he refered him to an ear specialist at the R.I.H. and highest physician and staff desagreed that there is not much that he can due because they are saying that there is not ear implants. Plaintiff asked Dr. Edoro for skull X-Ray to prove it and he agreed. Ms Giny performed three (3) X-Ray of Plaintiff's skull and the ear implants show up in the photographs. Ms. Giny explained how the implants are located this was witnessed by Plaintiff and the officers who escorted him to the institutional Dispensary. All documented evidence was placed in Plaintiff Medical Record.

Contrary to defendants allegation the Plaintiff have never been transported to the MRI Center located in Cranston, Rhode Island and never been examined by ear specialist.

The defendants' motion and affidavits tell a very different story. They claim that the Plaintiff refused pre-operative testing procedure. Regarding his left eye surgery, that on March 8, 2006, during an exam of the Plaintiff at the R.I.H. eye clinic.

A STAFF MEMBER NOTED THAT THE PLAINTIFF DID NOT DESIRE SURGERY, THAT THE PLAINTIFF DON'T HAVE EAR IMPLANTS, AND THAT ON MARCH 8, 2006, THE PLAINTIFF WAS TRANSPORTED TO THE MRI CENTER LOCATED IN CRANSTON, RHODE ISLAND AND DURING SAID VISIT RECEIVED A SKULL X-RAY AND NO EAR IMPLANT OR SPECIFIC ABNORMAL DENSITIES ARE SEEN.

# ARGUMENT

## POINT - I

THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGEMENT FOR THE DEFENDANTS ON THE PLAINTIFF'S EIGHTH AMENDMENT CLAIM.

SUMMARY JUDGMENT IS TO BE GRANTED ONLY IF THE RECORD BEFORE THE COURT SHOW THAT THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND THAT THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW. RULE 56 (C) FED. R. CIV. P. A MATERIAL FACT IS NO ONE THAT MIGHT AFFECT THE OUTCOME OF THE SUIT UNDER GOVERNING LAW. ANDERSON V. LIBERTY LOBBY INC., 477 U.S. 248 (1986).

THE AFFIDAVITS OF THE PLAINTIFF AND THE DEFENDANTS ARE SQUARELY CONTRADICTORY AS TO THE EYE SURGERY,

PRE-OPERATIVE PROCEDURE, AND THE EAR IMPLANTS. THE STATEMENT AND EXHIBITS EVIDENCE IN THE PLAINTIFF'S AFFIDAVIT CLEARLY DEMONSTRATE THAT HE IN FACT UNDERGO ALL PRE-OPERATIVE TESTING PROCEDURES, THAT HE DO WANT THE EYE SURGERY TO BE PERFORMED, THAT IN FACT HE DO HAVE EAR IMPLANTS BILATERALLY, THAT HE HAVE NEVER BEING TRANSPORTED TO THE MRI CENTER, AND THAT HE HAS NOT BEEN SEEN BY ANY EAR SPECIALIST. THERE IS CLEARLY GENUINE ISSUES OF FACT.

THE FACTUAL DISPUTE IS ALSO MATERIAL. THE FACTS ALLEGE BY THE PLAINTIFF ARE EVIDENCE THAT THE DEFENDANTS HAVE BEEN WILLFUL DELIBERATE INDIFFERENT TO HIS SERIOUS MEDICAL NEEDS BY REFUSING TO COMPLY WITH THE SETTLEMENT AGREEMENT CONCERNING PLAINTIFF'S LEFT EYE SURGERY, REFUSING TO HAVE THE UNLAWFUL AND UNCONSTITUTIONAL IMPLANTED DEVICE REMOVED. THESE FACT WOULD SUPPORT A JURY VERDICT IN THE PLAINTIFF'S FAVOR.

IT IS POINTED OUT THAT IN THE CASE OF PLEADINGS LITIGANTS ACTING AS THEIR OWN COUNSEL MUST BE GIVEN BROADER LATITUDE AND NOT BE HELD TO THE STRICT STANDARD THAT TRAINED COUNSEL ARE HELD TO. SEE <u>HAINES</u> V. <u>KERNER</u>, 404 U.S. 519 (1972); <u>MACLIN</u> V <u>PAULSON</u>, 627 F. 2d. 83 (CA 7)(1980). WHERE THE COURT RECOGNIZED THAT A PRO-SE COMPLAINT MUST BE CONSTRUED BROADLY AND LIBERALLY, AND ITS PLEADINGS BE HELD TO A LESS STRINGENT STANDARD THAN FORMAL PLEADINGS DRAFTED BY LAWYERS.

Furthermore, the Court held in that case that Courts must take added precautions before ruling on a motion for summary judgment when a pro-se litigant is involved, especially when enforcing the requirements might result in the loss of the opportunity to prosecute or defend a lawsuit on the merits. Jason v. Circle K. Corp. 773 F. 2d. 1138. 1140 (10th Cir. 1985).

## CONCLUSION

Based upon the foregoing reasons and the circumstances of this case, the defendants' motion for summary judgment should be denied.

Respectfully submitted,

[signature]

BERNARDO FIGUEROA
I.D. # 80803
ISC P.O. BOX 8249
CRANSTON, RI 02920