UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA

v. C.A. No. 05-185S

ASHBEL T. WALL, ET AL.

# AFFIDAVIT

I, Bernardo Figueroa declare Under Penalty of Perjury:

1. I am the Plaintiff in the above entitled case, I makes this affidavit in opposition to defendants' motion for summary judgment.

2. the defendants' motion and affidavits claim in summary, that the Plaintiff was voluntarily transferred to prison facility in Virginia, that Plaintiff refusing to engage in Pre-OP. testing require by Rhode Island Hospital (RIH), that on March 8. 2006, Plaintiff was transported to the MRI center located in Cranston and received a skull X-Ray during said visit, and that the X-Ray report indicated no ear implants. and that on March 8, 2006, Plaintiff was seen at R.I.H. eye

Clinic. And during an exam a staff member of the eye clinic Noted that the Plaintiff did not desire surgery.

3. The defendants are not entitled to summary judgment because there are genuine issues of material fact to be Resolved. these issues are identified in the accompanying statement of disputed factual issues Filed by the Plaintiff Pursuant to the local Rules of this court. The Fact are set out in this Affidavit.

4. In 1991, While I Was Confined at the R.I.A.C.I. Medical staff diagnosed me as having eye condition, that Would Require Surgery on both of my eye i.e., Pterygium excision, and arrangement Was made With the R.I.H. to have the eye surgery Performed.

5. On November 10, 1992, A.C.I. officers Transported me to the R.I.H. in order to undergo surgery in my Right eye. Dr. Daniel Petashnick and other doctors and Medical staff Performed the surgery.

6. Years later I learned that While undergoing eye surgery two (2) devices Was surgically implanted inside both of my ear canal bilaterally Without my Knowledge and or Consent.

7. Because Prison officials Refusal to have the surgery in Plaintiff's left eye a civil action Was

Filed FIGUEROA v. VOSE, ET AL., C.A. No. 98-169 ML. And on January 12, 1999, the defendants and I. executed a settlement stipulation wherein the defendants agreed to settle that case by schedule the surgery for my left eye.

8. Do to the defendants failure to comply with the settlement agreement, I filed a motion for contempt to which the defendants objected saying that I refused Pre-op. testing on March 12, 1999. Please see full EXHIBIT-"A."

9. On June 24, 1999, I fully cooperated and undergo all pre-operative testing procedures including blood tests and E.K.G. Please see full EXHIBIT-"B."

10. After all pre-op. testing procedures was completed on June 7, 1999, I was informed that I will be schedule for Pterygium surgery and on July 10, 1999, the eye surgery was scheduled please see full EXHIBIT-"C."

11. On July 1999, the Providence Anesthesiologists sent me a notice that the range of anesthesia charges is $400.00 to $1.200,00. Please see EXHIBITS-"D."

12. The surgery that was scheduled to be performed in my left eye within a few weeks was never performed

because on August 5, 1999, Prior to the surgery. I Was involuntarily and by force transferred to a Virginia Supermaximum Prison.

12. While in Virginia Prison I complained to medical and Prison staff about my ear condition cause by the implants requesting that the implanted devices be removed. In response I was told: it is documented that you do have ear implants, bilaterally. however, there is no medical need at this time to have them removed. Please see full EXHIBITS-"E."

13. On October 16, 2005, I Was Returned to the RIACI from Virginia and Placed in isolation Where I have been. On November 2005, Dr. Edoro examined my ear canal and Prescribed medication for the Pain and to Prevent infection. Which I have been taken two times a day.

14. On January 2006, again I Was seen by Dr. Edoro Concerning my ear condition, after an examination he referred me to an ear specialist at R I H. but said referral Was overruled by a highest Physician and staff at the R I A C I.

15. On February 22, 2006, I Was brought before Dr. MacMillan and Rosemary Diguilio at the A.C.I. Med. Security Dispensary. Dr. MacMillan and Diguilio told me

that they Was asked by the Court to conduct an evaluation of my ear condition, that they need all information and documents that I had concerning the ear implants. I told them that I don't have these with me, and without conducting any examination Dr. MacMillan told me that she will see me in two weeks to bring the documents with me.

16. On said February 22, 2006, I wrote to this Court asking if the Court has directed these doctor to conduct an evaluation concerning my ear canal condition regarding the ear implants. I was informed by this Court that it is the Department of Corrections who is conducting and or arrange medical evaluation no the Court. Please see EXHIBIT-"F."
After this I have never heard from Dr. MacMillan.

17. On March 7, 2006, I was transported to the R.I.H. eye clinic concerning the surgery in my left eye, during said visit I informed the doctor that a civil trial has been scheduled for April 2006, and that I am pro-se in said case, that I wish to wait until the trial is completed to undergo eye surgery, the doctor prescribed me artificial tears and eye glasses and told me that he would see me in six (6) month to let prison officials knows when the trial

is Completed so that the may made the arrangement for the surgery to be performed in my left eye. the Prescribed artificial tears has been provided to me, but not the needed eye glasses.

18. On march 8. 2006, I was brought to the A.C.I. intake service center Dispensary to be examined by Dr. Edoro concerning my ear condition and the ear implants. Dr. Edoro told me that there is nothing he can due because he referred me to an ear specialist at R.I.H. and highest medical and prison staff say no, because they are saying that you don't have ear implants. I. asked Dr Edoro for skull x-ray to prove it he agreed. and Ms Giny performed three (3) x-ray of my skull, and placed them on the board lights. the ear implants became visible and were seen by me and the officers who brought me to the Dispensary, in addition Ms. Giny explained how the implants are situated. Dr. Eduro asked for copy of the documented evidence concerning the implants and put them in my medical record:

19. Contrary to defendants' motion and affidavits at no time I have ever been transported to the M.R.I. center, or been examined by ear specialist nor do I have refused eye surgery, to the

Contrary I made an offert for settlement in which I would agree to settle the cases I have pending by having the eye surgery performed, the ear implants removed and no to be transferred to Virginia Prison.

20. The foregoing factual allegations create a genuine issues of material fact, that will, at trial entitle me to judgment as explained in the objection (brief) to defendants' motion.

[signature]
BERNARDO FIGUEROA

Subscribed and sworn to before me in Cranston, R.I. this 27 day of April, 2006

[signature]
NOTARY PUBLIC

My Comm. Exp. 4/13/2010

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BERNARDO FIGUEROA

V C.A. No. 05-185 S

ASHBEL T. WALL, Et. AL.

# CERTIFICATE OF SERVICE

I hereby Certifies that on this 1st day of April 2006, A TRUE COPIES OF PlAINTIFF'S objection to defendant's Motion FOR SUMMARY JUDGMENT BRIEF in opposition, AFFidavit, exhibits and statement of disputed Fact Was Mailed to defendants' Attorney Michael B. GRANT, Esq. At RIDOC 40 Howard Avenue CRANSTON, RI 02920

[signature]
BERNARDO FIGUEROA
I.D. # 50503
ISC P.O. BOX 8249
CRANSTON, RI 02920