UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**BERNARDO FIGUEROA**

v.                                             **C.A. No. 05 - 185 S**

**A.T. WALL**, Director, Rhode Island
Department of Corrections, and
**JOSEPH DINITTO**, Associate Director,
Rhode Island Department of Corrections

## Report and Recommendation

Jacob Hagopian, Senior United States Magistrate Judge

Bernardo Figueroa, a *pro se* inmate lawfully confined at the Rhode Island Department of Corrections ("RI DOC"), filed a Complaint pursuant to 42 U.S.C. § 1983 and named as a defendants A.T. Wall, Director of the RI DOC, and Joseph DiNitto, Associate Director of Classification at the RI DOC (collectively "defendants"). In his Complaint, plaintiff essentially alleges three claims: (1) the defendants refuse to provide necessary surgery to alleviate a condition the plaintiff has in his left eye, in violation of the Eighth Amendment; (2) the defendants secretly implanted devices in his ears and refuse to remove those devices, in violation of the Eighth Amendment, and (3) the defendants confined him at a prison in Virginia where alleged unconstitutional conditions existed, in violation of the Eighth Amendment.

Currently before the Court is the motion of defendants for

1

summary judgement pursuant to Fed. R. Civ. P. 56 on plaintiff's claims regarding the lack of surgery on his left eye and the alleged implanted devices in his ears.[1] Plaintiff has objected thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that the defendants' motion for summary judgement be **GRANTED**.

## Undisputed Facts

The following are the undisputed facts, gleaned from the parties' submissions in this matter:

Plaintiff is an inmate legally in the custody of the RI DOC. In 1998, the RI DOC's medical staff determined that the plaintiff's left eye had a condition called pterygium, a condition which involves a growth over the white portion of the eye. In plaintiff's case, the growth was "extremely small,"see Affidavit of Francis X. Figueroa, M.D., ¶ 5, and did not affect his vision in any manner. Id. at ¶ 10.

Nonetheless, the RI DOC scheduled the plaintiff for consultations at Rhode Island Hospital("RIH") for possible surgery. Plaintiff was seen was at RIH by Dr. Bryan Welcome on two occasions. Dr. Welcome also noted that the growth on plaintiff's eye was small, see id. at ¶'¶ 11 & 13, and surgery was scheduled to

---

[1] In their motion for summary judgement, Defendants did not address plaintiff's claims regarding the conditions of confinement that the plaintiff allegedly faced in Virginia.

remove the growth. Plaintiff, however, refused to undergo any of the pre-operative testing. <u>See</u> Affidavit of Rosemary Di Giulio, ¶ 4. Accordingly, the surgery was cancelled. Soon thereafter, pursuant to a stipulation agreement entered in a separate case, the RI DOC transferred the plaintiff to a correctional facility in Virginia.

Plaintiff filed this action in May of 2005 alleging that the defendants (1) failed to provide necessary surgery with respect to his eye condition, (2) at some point in time, secretly implanted devices in his ears and refuse to have them removed, and (3) are subjecting him to unconstitutional conditions at the prison where he is confined in Virginia. In October 2005, the RI DOC relocated the plaintiff to the Adult Correctional Institutions at the RI DOC. Thus, plaintiff is no longer confined in Virginia.

With his return to Rhode Island, and in light of his claims filed in this case, the defendants provided prompt medical care for the plaintiff. On February 22, 2006, Dr. MacMillan, an ears, nose, and throat specialist examined the plaintiff's ears and noted no abnormalities. Additionally, plaintiff received a skull x-ray which was read by a physician at the MRI Center in Cranston, Rhode Island, a Dr. Louis Maiello. Dr. Maiello indicated in his report that "no ear implant or specific abnormalities are seen. The exam is entirely normal." <u>See</u> Report of Louis Maiello, M.D (Dckt. # 40). Moreover, plaintiff was examined by Dr. Edoro, a full -time

3

physician at the RI DOC on at least three occasions. Dr. Edoro found that the plaintiff's ears were normal with no implants.

With respect to the condition in his left eye, the RI DOC physicians also conducted eye examinations upon his return to Rhode Island. And on March 8, 2006, the RI DOC transported the plaintiff to the Rhode Island Hospital's Eye Clinic for surgery on his left eye. The plaintiff, however, <u>again</u> refused to have the surgery.

Nonetheless, the undisputed facts indicate that the quality of the plaintiff's vision has not been affected due to the lack of the eye surgery, and that the plaintiff was suffering from no adverse effects from the condition. Moreover, the plaintiff has received treatment for the condition. He has been provided with prescription medication.

Additionally, Dr. Figueroa has indicated that the plaintiff's eye condition "has neither in the past, nor at the present, constitute a serious medical need mandating surgery in order to preserve or maintain the quality of the plaintiff's vision." <u>See</u> Affidavit of Francis X. Figueroa, M.D. at ¶ 17. Indeed, Dr. Figueroa indicated that the surgery in plaintiff's situation is considered elective. <u>Id</u>. at ¶ 16.

### Discussion

### a. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is

a genuine need for trial." <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" <u>Garside</u>, 895 F.2d at 48 (quoting <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 247-248 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See <u>id.</u> at 256-257. This evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. <u>Anderson</u>,

5

477 U.S. at  256-257.

**b. 42 U.S.C. § 1983**

Plaintiff has brought suit under 42 U.S.C. § 1983.  Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. In order to maintain a section 1983 action, the conduct complained must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right.  Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also, Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980)(statutory deprivations). Here, there is no dispute that the named defendants acted under the  color of law. However, the defendants assert that the undisputed facts fail to demonstrate an Eighth Amendment violation.  I agree.

**c. Eighth Amendment**

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.   The Cruel and

Unusual Punishments Clause was designed to protect those convicted of crimes, and can limit the type of punishment that is imposed. Ingraham v. Wright, 430 U.S. 651, 664 (1977).  After an individual is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. Whitely v. Albers, 475 U.S. 312, 318-319 (1986). "[W]hat is required to establish the unnecessary and wanton infliction of pain varies according to the nature of the alleged Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The failure to provide medical attention to an injured prisoner can be an Eighth Amendment violation. See, e.g., Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981); Rosen v. Chang, 758 F. Supp. 799 (D.R.I. 1991).  In order demonstrate a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Officials must "intentionally" delay or completely deny access to medical care. Id. at 104-05.

Deliberate indifference requires a state of mind akin to criminal recklessness; that the official knew of and consciously disregarded a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825 (1994); Mahan v. Plymouth County House of Corrections, 64 F.3d 14 (1st Cir. 1995). Deliberate indifference to the medical needs of an inmate amounts to an Eighth Amendment violation only when the needs of the inmate are serious. Hudson,

503 U.S. at 9.

Thus, deliberate indifference to an inmate's medical needs requires a two part inquiry. First, the court must ask whether the inmate's medical needs are objectively serious.  The illness must have "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan, 64 F.3d at 18. Second, there must be an element of a culpable state of mind or reckless disregard rising to the level of criminal recklessness on the part of the defendant. Farmer, 511 U.S. at 826. The "Eighth Amendment outlaws cruel and unusual punishments, ... and the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment...." Id. Only when both prongs are met, can the defendants be liable.

## 1. Plaintiff's Claim of a Failure to Provide Necessary Eye Surgery

First, plaintiff claims that the defendants failed to provide him with necessary surgery on  his left eye. Plaintiff claims that the failure to provide this treatment constitutes a violation of his Eighth Amendment rights.

In order to find an Eighth Amendment violation, the court must ask first ask whether the inmate's medical needs are objectively serious. The illness must have "been diagnosed by a physician as

8

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Mahan</u>, 64 F.3d at 18.   Here, the undisputed facts demonstrate that plaintiff's eye condition did not affect the quality or the longevity of his vision. Indeed, the surgery to alleviate plaintiff's condition is considered elective. Thus, plaintiff did not suffer from a serious medical need within the meaning of the Eighth Amendment.

Notwithstanding the lack of a serious medical need, the undisputed facts demonstrate that the plaintiff can not meet the second prong necessary to sustain a violation of the Eighth Amendment. Plaintiff must demonstrate that the defendants had a culpable state of mind or reckless disregard rising to the level of criminal recklessness. <u>Farmer v. Brennan</u>, 511 U.S. at 826. The undisputed facts demonstrate that the plaintiff was provided with medical examinations of his eyes and treatment for the condition. Moreover, while the defendants have scheduled surgery to alleviate plaintiff's condition, the undisputed facts demonstrate that the plaintiff is the one who <u>refused</u> surgery on two occasions. Accordingly, any failure to have the surgery rests with the plaintiff. Plaintiff has produced no evidence to demonstrate that the defendants have been deliberately indifferent to his eye condition.

Accordingly, the defendants motion for summary judgement

should be granted on this claim. I so recommend.

## 2. Plaintiff's Claims Regarding Implanted Devices in his Ears

Plaintiff next alleges that the defendants secretly implanted devices in his ears and refuse to remove these devices. Plaintiff claims that the implantation and/or removal of these devices constitutes a "serious medical need," which the defendants refuse to alleviate, in violation of the Eighth Amendment. Plaintiff's fanciful claim is wholly without merit.

Despite the obvious frivolity of this claim, the undisputed facts demonstrate that the defendants arranged for, and provided, numerous medical examinations of the plaintiff's ears, to include a skull X-ray. No less than three doctors examined the plaintiff's ears and found that "plaintiff's ears were normal." Thus, the undisputed facts demonstrate that the plaintiff has no serious medical need with respect to his ears. There are no devices implanted in plaintiff's ears.

Moreover, the defendants were not "deliberately indifferent" to plaintiff's needs. As mentioned, the undisputed facts demonstrate that the defendants provided numerous medical consultations based upon plaintiff's claims.

Accordingly, defendants' motion for summary judgement should be granted on this claim. I so recommend. Plaintiff has failed to demonstrate that he has a serious medical need and that the defendants were deliberately indifferent to his needs.

10

### Conclusion

For the reasons stated above, I recommend that the defendants' motion for summary judgement be granted. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d).  Failure to filed timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 ( 1st  Cir. 1986) (per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
August  31 , 2006

11